*Michigan Supreme Court*
*Lansing, Michigan 48909*

# *Opinion*

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 1, 2001**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

                       No. 115890

MICHELLE ANN SOBCZAK-OBETTS,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

We granted leave in this case to consider whether firearms found in defendant's home, upon execution by federal and state police officers of a federal search warrant, were properly excluded from evidence in a state prosecution. The firearms were suppressed on the ground that a copy of the affidavit in support of the search warrant was not provided, as required by statute, to defendant at the time the warrant was executed. Because we are unable to conclude that the Legislature intended the exclusionary rule to apply to the

procedural violation of Michigan's statutory warrant requirements at issue in this case, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant and her husband, Timothy Obetts, were co-owners of Pro Temp One Incorporated,[1] a Michigan corporation that provided skilled and semiskilled health care workers to hospitals, nursing homes, and private homes. In May 1997, the Michigan Accident Fund, Pro Temp One's worker's compensation carrier, received a call on its fraud hotline indicating that defendant, Obetts, and Pro Temp One had misrepresented worker's compensation employee classifications to the fund. After gathering information from associates and former employees of Pro Temp One, a fraud investigator from the fund contacted Michigan State Police Sergeant Jack Vanderwal, who initiated a criminal investigation. Vanderwal contacted the Federal Bureau of Investigation after determining that defendant and Obetts may have obtained bank loans by use of fraud in addition to defrauding the fund of worker's compensation premiums.

Special Agent David Smith of the FBI interviewed two former employees of Pro Temp One and a personal friend of defendant.[2] On the basis of the information provided by these

---

[1]Pro Temp One also conducted business as First Agency Professionals Incorporated and Agency Professionals Incorporated.

[2]It appears from the record that the two former employees had been fired by defendant, and that at least one of them was
(continued...)

three sources, Smith sought a federal search warrant to search the private residence of defendant and Obetts. Smith's affidavit in support of the search warrant referred to the three sources as "Source One," "Source Two," and "Source Three." On October 30, 1997, a federal magistrate issued the requested search warrant.[3] The magistrate ordered that the affidavit in support of the warrant be sealed, apparently to protect the sources.

On October 31, 1997, the federal search warrant was executed at the residence of defendant and Obetts by one or more FBI agents and one or more Michigan State Police officers. While searching the basement of the home, two of the FBI agents came upon a locked safe. The agents asked defendant about the contents of the safe, and she replied that it contained weapons. Defendant then unlocked the safe, and the agents seized two handguns from it. In accordance with federal procedure, when the search was completed, defendant was given a copy of the search warrant and a tabulation of the items seized. Notably, defendant was not provided with a copy of the sealed affidavit. Defendant was subsequently charged by the Kent County Prosecutor with possession of a firearm by

[2](...continued)
involved in litigation with defendant.

[3]The magistrate also issued a warrant to search the business premises of Pro Temp One. This warrant was executed simultaneously with the warrant to search the private residence.

3

a person convicted of a felony.  MCL 750.224f; MSA 28.421(6).[4]

At defendant's preliminary examination, defense counsel requested a copy of the affidavit in support of the search warrant.  The assistant prosecutor indicated that the federal magistrate would be petitioned to unseal the affidavit for purposes of the state proceedings.  The district court judge presiding over the preliminary examination stated that he would bind defendant over for trial after defendant received a copy of the affidavit.  Within two weeks following the preliminary examination, the affidavit was unsealed and provided to defendant, and she was bound over for trial.

Defendant moved to exclude the firearms from evidence on various grounds, including that the police did not comply with Michigan statutory requirements regarding warrant execution. Following two hearings on the motion to suppress, the trial court held that the motion had to be granted on the ground that defendant was not provided with a copy of the affidavit in support of the search warrant at the time of the search in contravention of MCL 780.654; MSA 28.1259(4).  The trial court noted that the issuance and execution of the search warrant were "perfectly legitimate" under federal law.  However, the court held that precedent from this Court required that evidence seized in the absence of full compliance with Michigan's statutory warrant provisions be suppressed in a state prosecution.  Accordingly, the trial court entered an

---

[4]Defendant was not charged with any federal offense or with worker's compensation fraud as a result of the search.

4

order suppressing the firearms and dismissing the case.

A divided panel of the Court of Appeals affirmed. 238 Mich App 495, 496-504; 606 NW2d 658 (1999). In the lead opinion, Judge Hoekstra noted first that, pursuant to *People v Paladino*, 204 Mich App 505, 507-508; 516 NW2d 113 (1994), in a joint operation between the state and federal governments, state law governs the validity of a search warrant in state court proceedings. Judge Hoekstra next opined that, although two panels of the Court of Appeals had recently held that a failure by law enforcement officers to comply with the statutory requirement to attach a copy of the affidavit to the copy of the warrant provided to the defendant does not require suppression of evidence seized pursuant to the warrant,[5] those decisions conflicted with this Court's holding in *People v Moten*, 233 Mich 169; 206 NW 506 (1925).[6] Judge Hoekstra concluded that, because *Moten* had not been overturned, the Court of Appeals was constrained to hold that, where a warrant relies on an attached affidavit for its statement of probable cause and that affidavit is not attached to the warrant as statutorily required, the evidence seized pursuant to the warrant is inadmissible. However, Judge Hoekstra indicated

---

[5]*People v Garvin*, 235 Mich App 90, 99; 597 NW2d 194 (1999); *People v Pipok (After Remand)*, 191 Mich App 669, 673; 479 NW2d 359 (1991).

[6]In *Moten*, this Court held that, where the face of the search warrant did not recite all the material facts alleged in the supporting affidavit as required by the then-applicable search warrant statute, the warrant was invalid, and the evidence seized pursuant thereto must be suppressed. *Id.* at 174.

his disagreement with the *Moten* holding:

> While this particular statutory provision generally relates to a constitutional right, the specific portion of the statute requiring a recitation of the basis for probable cause or the attachment of the affidavit only barely relates to the substantive right the Legislature is seeking to protect. The requirement is more of a ministerial duty than a right. Consequently, were I able, I would hold that defendant must show some prejudice before the trial court suppresses the evidence seized using a statutorily defective warrant. In this case, for example, defendant was eventually afforded a chance to contest the basis for the warrant. I am unable to see how defendant was put at a disadvantage by being forced to delay her arguments until the parties obtained a copy of the federal affidavit. I think it is especially important that defendant be forced to show some level of prejudice given that the warrant met all the requirements of the federal warrant statute. Here, I find it necessary to exclude the evidence in question because the state warrant requirements differ from federal warrant requirements. Neither party has argued that the federal warrant requirements are unconstitutional, so it seems that I am forced to declare a search invalid because the ministerial duties associated with executing a federal warrant differ from those associated with executing a state warrant, a result I hope our Supreme Court will find equally unsettling. [238 Mich App 503-504.]

Judge Cavanagh concurred only in the result. 238 Mich App 504.

Judge Gage dissented, opining that the Court of Appeals decisions in *People v Garvin*, 235 Mich App 90; 597 NW2d 194 (1999), and *People v Pipok (After Remand)*, 191 Mich App 669; 479 NW2d 359 (1991), controlled this case, and that this case was distinguishable from *Moten*. While the statute in effect at the time *Moten* was decided required that the search warrant itself contain a recitation of the affidavit's statement of probable cause, Judge Gage noted, the current statute allows

instead the attachment of the affidavit to the search warrant. In light of this statutory amendment, Judge Gage stated she would hold that *Moten* was not controlling, and that suppression of the firearms in this case was not required because defendant had failed to demonstrate that she was prejudiced as a result of the "technical, nonconstitutional" statutory violation. 238 Mich App 504-508.

We granted the prosecution's application for leave to appeal,[7] and we now reverse.

## II. STANDARD OF REVIEW

This Court reviews a trial court's ruling regarding a motion to suppress for clear error. *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (2000); *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983). However, questions of law relevant to the suppression issue are reviewed de novo. *Stevens, supra* at 631; see also *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

Where violation of a state statute is involved, "'[w]hether suppression is appropriate is a question of statutory interpretation and thus one of legislative intent.'" *Stevens, supra* at 644, quoting *People v Wood*, 450 Mich 399, 408; 538 NW2d 351 (1995) (BOYLE, J., concurring). "'Because our judicial role precludes imposing different policy choices than those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative

_____

[7]462 Mich 912 (2000).

7

intent that may reasonably be inferred from the words expressed in the statute.'" *People v McIntire*, 461 Mich 147, 152; 599 NW2d 102 (1999), quoting 232 Mich App 119 (YOUNG, P.J., concurring in part and dissenting in part). "'When a statute is clear and unambiguous, judicial construction or interpretation is unnecessary and therefore, precluded.'" *Stevens*, *supra* at 644, quoting *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992).


### III. ANALYSIS

### A. STATUTORY WARRANT REQUIREMENTS

In support of her motion to suppress the weapons, defendant contended that MCL 780.655; MSA 28.1259(5)—by reference to MCL 780.654; MSA 28.1259(4)—required the officers executing the federal search warrant to provide her with a copy of the affidavit in support of the warrant. Because the officers provided only the warrant itself and not the affidavit, defendant argued that the search was defective and the handguns had to be suppressed. The trial court agreed.

MCL 780.654; MSA 28.1259(4) provides as follows:

> A search warrant shall be directed to the sheriff or any peace officer, commanding such officer to search the house, building or other location or place, where any property or other thing for which he is required to search is believed to be concealed. Each warrant shall designate and describe the house or building or other location or place to be searched and the property or thing to be seized. *The warrant shall also state the grounds or the probable or*

8

*reasonable cause for its issuance, or in lieu thereof, a copy of the affidavit may be attached thereto.* [Emphasis supplied.]

The requirement that the warrant be left at the scene or otherwise given to the premises owner is found in MCL 780.655; MSA 28.1259(5), which provides as follows in pertinent part:

> When an officer in the execution of a search warrant finds any property or seizes any of the other things for which a search warrant is allowed by this act, the officer, in the presence of the person from whose possession or premises the property or thing was taken, if present, or in the presence of at least 1 other person, shall make a complete and accurate tabulation of the property and things so seized. *The officer taking property or other things under the warrant shall forthwith give to the person from whom or from whose premises the property was taken a copy of the warrant and shall give to the person a copy of the tabulation upon completion, or shall leave a copy of the warrant and tabulation at the place from which the property or thing was taken.* [Emphasis supplied.][8]

### B. APPLICATION OF THE EXCLUSIONARY RULE

#### 1. INTRODUCTION

---

[8]We note that § 5 does not explicitly require that the *affidavit* in support of the search warrant, if attached to the warrant pursuant to § 4, be provided to the premises owner at the time of the seizure. However, the prosecution concedes that § 5 was violated by the officers' failure to provide defendant with a copy of the search warrant affidavit at the time the handguns were seized. This is consistent with the holdings of the Court of Appeals in *People v Chapin*, 244 Mich App 196; ___ NW2d ___ (2000), and *Garvin, supra* (where the affidavit is attached to the warrant pursuant to § 4, the affidavit becomes part of the "warrant" that must be provided or left at the premises pursuant to § 5); but see *Chapin, supra* at 208 (HOOD, J., dissenting) (the plain language of § 5 requires only that the search warrant itself be provided or left at the premises). We agree with *Chapin* and *Garvin* and hold that, where an affidavit is attached to the warrant as permitted by § 4 in lieu of a statement of probable cause in the warrant itself, the affidavit is part of the "warrant" referred to in § 5.

The prosecution argues that, where the only defect in the search and seizure was a technical violation of Michigan's statutory warrant requirements, and where there has been no violation of defendant's constitutional rights under the Fourth Amendment, the exclusionary rule should not be applied.[9]  Defendant-who makes no argument that her constitutional rights were violated by the officers' actions-contends that suppression of evidence is the proper remedy for a statutory violation of this kind, and that suppression is indeed required pursuant to this Court's holding in *Moten* and its progeny.  Because we conclude that *Moten* is distinguishable from the case at bar, and because we do not discern any legislative intent that the exclusionary rule be applied to a violation of MCL 780.655; MSA 28.1259(5), we hold that suppression of the evidence in this case was not appropriate.

## 2.  *PEOPLE V MOTEN*

In a trilogy of prohibition-era cases, this Court suppressed evidence obtained pursuant to search warrants that were violative of the search warrant requirements set forth in § 27 of Michigan's "liquor law," 1922 CL 7079(27), which

---

[9]There is no federal counterpart to the Michigan statutory requirement that the search warrant state on its face the grounds or cause for its issuance or have the affidavit attached.  MCL 780.654; MSA 28.1259(4).  See 18 USC 3101 *et seq.*; FR Crim P 41(c).  Defendant did not, and does not now, claim any deprivation of *constitutional* rights with respect to the procedure utilized by the federal magistrate in issuing the search warrant or in sealing the affidavit, or by the federal and state officers in executing the warrant.

provided in relevant part as follows:

> No warrant for search shall be issued until there has been filed with the magistrate an affidavit describing the house or place to be searched, the things to be searched for, and alleging substantially the offense in relation thereto, and that affiant believes, and has good cause to believe that such liquor is there concealed: Provided, however, That any description that will enable the officer to find the house or place to be searched shall be deemed sufficient. The warrant for search shall be directed to the proper officer and *shall recite all of the material facts alleged in the affidavit*, and describe the things to be searched for and the place to be searched.   A warrant for search and seizure substantially in the following form shall be sufficient:
>
> ". . . Whereas there has been filed with the undersigned an affidavit (*here set out the material facts alleged in the affidavit*) . . . ." [Emphasis supplied.]

In *Moten*, this Court held that § 27 of the liquor law had been violated where the search warrant did not contain a recitation of the facts alleged in the affidavit.  As a result of this statutory violation, the *Moten* Court held,

> [t]he warrant is invalid, and the evidence procured thereunder inadmissible. "With such evidence out, defendant should have been discharged." *People v Knopka*, 220 Mich 540 [190 NW 731 (1922)].[10]

---

[10]The search warrant at issue in *Knopka* was held to be violative of both § 27 of the liquor law *and* the Michigan Constitution's probable cause requirement, Const 1908, art 2, § 10.   *Id.* at 545.   The *Knopka* Court concluded: "It not appearing that the search warrant was issued upon the constitutional and statutory showing of probable cause, it must be held that the evidence procured by it was inadmissible and should have been suppressed and that, with such evidence out, defendant should have been discharged.  See *People v De La Mater*, [213 Mich 167; 182 NW 57 (1921)]; *People v Mayhew*, [214 Mich 153; 182 NW 676 (1921)]; *People v Halveksz*, [215 Mich 136; 183 NW 752 (1921)]." *Knopka, supra* at 545.   The cases cited by the *Knopka* Court as authority for suppressing
(continued...)

11

The conviction must therefore be set aside and defendant discharged. [*Moten*, *supra* at 174.]

In *People v Bules*, 234 Mich 335; 207 NW 818 (1926), the search warrant suffered from the same deficiency as that in *Moten*: It failed to recite the facts set forth in the supporting affidavit as required by § 27 of the liquor law. Because the statute had been violated, this Court held, "[the] warrant was void on its face" and the evidence had to be suppressed:

> The mandate of the statute is clear, that the material facts alleged in the affidavit for the warrant shall be recited in the warrant, and the legislature even took the pains to set out a form, in which it directed the user to ("Here set out the material facts alleged in the affidavit"). . . . The law cannot be made plainer, and is but expressive of long time precedent established to prevent abuse. We deplore the carelessness evidenced here and so inexcusable if the statute was read, but we are bound to correct here such a palpable blunder. The evidence seized on the so-called search warrant should have been suppressed. [*Bules*, *supra* at 336.]

Likewise, in *People v Galnt*, 235 Mich 646; 209 NW 915 (1926), the search warrant failed to recite the material facts alleged in the affidavit, contrary to § 27 of the liquor law. Accordingly, this Court held, the warrant was "void," and "the search [was] unlawful, a violation of [the defendant's] *constitutional* right [Const 1908, art 2, § 10] that his house

---

[10](...continued)
the evidence and dismissing the case (*De La Mater*, *Mayhew*, and *Halveksz*) concern searches that were held to be *constitutionally* deficient. *Moten* appears to be the first case of this Court requiring suppression of evidence as a remedy for a purely *statutory* search warrant defect, and it does not appear that the Court considered this distinction in reaching its decision.

shall be secure from unreasonable searches and seizures." *Id.* at 648 (emphasis supplied). Thus, what had been characterized in *Moten* and *Bules* as a purely statutory imperfection was in *Galnt* characterized as being of constitutional magnitude.

### 3. COURT OF APPEALS CASES APPLYING *MOTEN*

In recent years, the Court of Appeals has addressed the *Moten-Bules-Galnt* trilogy in the context of Michigan's modern search warrant statutes.[11] In *Pipok*, *supra*, a federal search warrant was executed by state and federal officers. The search warrant was issued pursuant to federal law, and it did not comply with Michigan's requirement set forth in MCL 780.654; MSA 28.1259(4) that a search warrant provide on its face or in an attached affidavit the grounds on which the warrant was issued. Relying on the *Moten* trilogy, the defendants contended that the noncompliance with § 4 rendered the search warrant invalid, and that the evidence seized pursuant to the warrant must be suppressed. The panel, finding *Moten* to be distinguishable, held that the statutory violation[12] did not require suppression of the evidence:

---

[11]We note that the warrant statute at issue in *Moten*, *Bules*, and *Galnt*, § 27 of the liquor law, was not a precursor of Michigan's current search warrant statutes, contrary to the assumptions of some members of the various Court of Appeals panels that have addressed *Moten*'s application to the current statutes. Rather, general search warrant statutes existed contemporaneously with the warrant provision contained in the liquor law. See, e.g., 1915 CL 15879-15883. 1915 CL 15881 is a precursor of the present-day MCL 780.654; MSA 28.1259(4).

[12]The *Pipok* panel stated, in dicta, that "when evidence (continued...)

13

The *Moten* Court . . . found the recital [of material facts alleged in the affidavit] to be an "essential requirement" of a valid warrant and held that evidence seized pursuant to a warrant lacking such a recital must be suppressed.

Since the court's decision in *Moten*, statutory law in this state has changed to permit a supporting affidavit to be attached to the warrant in place of stating the material facts, or grounds for issuance, on the warrant itself. Again, the provision is designed to guarantee that a record of probable cause is established. The Legislature has apparently recognized that the affidavit alone is sufficient to establish a record of probable cause

---

[12](...continued)
challenged in a state prosecution is obtained in a search involving the joint activity of state and federal officers, the search is scrutinized under state standards." *Id.* at 671. This proposition was reiterated by a different Court of Appeals panel, again in dicta, in *Paladino*, *supra* at 507-508 (noting that "[t]his ruling was based on the need to preserve state court integrity and to govern the conduct of state officers"). The prosecution in the present case urges us to abrogate the Court of Appeals "joint activity" rule and to hold that Michigan's statutory warrant requirements do not apply to a federal search warrant or to its execution by federal and state officers.

Because we hold that the statutory violation at issue in this case does not require suppression of evidence in any event, we need not address the propriety of the "joint activity" rule enunciated by the Court of Appeals. Nevertheless, we take this opportunity to note our disapproval of the dicta in *Pipok* and *Paladino* suggesting that state warrant requirements apply to joint federal and state execution of state warrants. Michigan statutory provisions governing issuance and execution of search warrants, on their face, and as a matter of the legislative power of this state, address *only* search warrants (which are judicial orders) issued by judicial officers of Michigan. See United States Const, art VI, cl 2 ("The Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"); Const 1963, art 4, § 1 ("The legislative power *of the State of Michigan* is vested in a senate and a house of representatives") (emphasis added). The United States of America is a sovereign entity; it does not require officers to provide an affidavit underlying a federal warrant following execution.

14

> and that it is not necessary to transcribe the material facts from the affidavit onto the warrant. [*Id.* at 672-673.]

The *Pipok* panel noted that the federal magistrate's determination of probable cause was based on an affidavit, that the defendants did not articulate any prejudice resulting from the noncompliance with § 4, and that the defendants were eventually provided with copies of the affidavit and given the opportunity to challenge the probable cause determination. The panel thus concluded that "the failure of the warrant to state the grounds for issuance or to have the supporting affidavit attached did not abrogate the purpose of the statute and that the error was one of procedure not requiring suppression of the evidence." *Id.* at 673.

In *Garvin, supra,* the Court of Appeals again addressed a defendant's contention that *Moten* required suppression of evidence, this time for a violation of MCL 780.655; MSA 28.1259(5). Officers from the Pontiac Police Department executed a search warrant at defendant Garvin's residence, seizing evidence implicating Garvin in a number of crimes. After completing the search of the house, the officers either provided a copy of the search warrant to Garvin or left it at his residence; however, the officers detached from the copy of the warrant provided to Garvin the affidavit in support of the warrant. The trial court granted Garvin's motion to suppress the seized evidence on the basis that § 5 had been violated by the officers' failure to provide Garvin with a

15

copy of the affidavit.

The Court of Appeals reversed, holding that the officers' failure to provide Garvin with a copy of the affidavit did not require suppression of evidence seized pursuant to the warrant. The panel noted that in *Pipok*, *supra*, the Court had refused to suppress evidence on the basis that § 4 had been violated, where there were no allegations that the search warrant was constitutionally defective or that the defendants had suffered any prejudice. Likewise, the *Garvin* panel concluded, suppression was not required as a remedy for a violation of § 5:

> [I]t follows [from *Pipok*] that the failure of the police to provide or leave a copy of the affidavit as part of the copy of the warrant does not provide a basis for suppression of evidence, because Garvin ultimately has the opportunity to challenge probable cause supporting the warrant and because the requirement is merely procedural.

> * * *

> We strongly agree with the pertinent holding by the *Pipok* Court. It is one thing, under certain circumstances, to order the drastic remedy of suppressing highly relevant evidence to enforce the fundamental constitutional guarantees against unreasonable searches and seizures of US Const, Am IV and Const 1963, art 1, § 11. It is quite another to extend the exclusionary rule to a technical deficiency, such as failing to provide or leave a copy of an affidavit in connection with the exercise of a reasonable search in which the law enforcement officers executing the search provide a copy of the search warrant itself, thereby providing notice that the search has been judicially authorized. [*Id*. at 99-101.]

More recently, a panel of the Court of Appeals has retreated from the holding of *Garvin* that suppression is not required for a violation of § 5. In *People v Chapin*, 244

16

Mich App 196; ___ NW2d ___ (2000), a search warrant was executed at the defendant's home. Upon completion of the search, a copy of the search warrant was left at the home. A copy of the affidavit was available; however, it was not left at the home, because the prosecutor had specifically requested that the officers not leave a copy of the affidavit. The defendant moved for suppression of marijuana and other incriminating evidence seized, arguing that § 5 had been violated and that suppression was required pursuant to *Moten*.

The *Chapin* majority, after determining that the statutory requirements of § 4 were "incorporated" within the provisions of § 5,[13] held that the violation of § 5 required suppression of the seized evidence. The majority opined that, although § 4 had been "amend[ed]" since the time *Moten* was decided,[14]

> [u]nder both versions of the statute, the requirement exists that the warrant, whether in the body of the warrant itself or by affidavit attached

---

[13]The defendant in *Chapin* argued that, although § 5 requires only that "a copy of the *warrant*" be provided to the person from whom or from whose premises property was taken, the "warrant" referred to in § 5 must include the affidavit if one is attached as permitted by § 4 (in lieu of a statement of probable cause in the warrant itself). The *Chapin* majority agreed, citing *Garvin*, *supra* at 98-99. Judge Hood, dissenting, disagreed and would have held that, "[p]ursuant to the plain language of this statute, the officer is only required to leave a copy of the *search warrant itself* . . . ." *Chapin*, *supra* at 208 (emphasis supplied).

[14]We note again that the liquor law search warrant provision at issue in *Moten* and its prohibition-era progeny was *not* a predecessor of MCL 780.654; MSA 28.1259(4). See n 12.

17

thereto, must state the grounds or the probable cause for its issuance.

* * *

Thus, despite recodification of the statute, [the holding in *Garvin* that, where a supporting affidavit is used in lieu of a statement of probable cause in the warrant pursuant to § 4, a copy of the affidavit becomes part of the "copy of the warrant" that must be provided to the defendant pursuant to § 5] is consistent with the Supreme Court's pronouncement in *Moten*, *Bules*, and *Galnt* that the material facts in support of the issuance of a search warrant must be included with the search warrant. [*Id.* at 201-203.]

Moving on to the question of the proper remedy for a violation of § 5, the *Chapin* majority declined to follow the holdings of *Garvin* and *Pipok* that suppression was not required:

[I]n *Garvin* the Court held that the failure of law enforcement officers to comply with the statutory requirement to attach a copy of the affidavit to the copy of the warrant provided or left does not require suppression of the evidence seized pursuant to the warrant because the requirement is merely procedural. See also [*Pipok*, *supra*]. However, *Garvin*'s holding is inconsistent with the Supreme Court's pronouncement in *Moten*, *Galnt*, and *Bules* that violation of the statutory requirement that the search warrant state the grounds or probable cause for issuance of the search warrant renders the warrant invalid and requires suppression of the evidence. Because *Moten*, *Galnt*, and *Bules* remain good law, we must follow their precedent. Thus, because officials left the warrant at defendant's home without the supporting affidavit, and the warrant itself did not state the probable cause grounds, the circuit court properly suppressed the evidence. See [238 Mich App 498]. [*Chapin*, *supra* at 203-204.]

Judge Hood dissented, opining that *Moten* was distinguishable because it addressed a statutory violation different from the violation at issue in *Chapin*:

18

Review of the statutes at issue reveals that *Moten*, *supra*, does not govern this case. The issue in *Moten* involved the statutory requirements that must be contained within a search warrant, now codified at MCL 780.654; MSA 28.1259(4). The defendant in *Moten* never took issue with the delivery of the search warrant that was left at the home, but rather, took issue with the contents of the search warrant itself.

\* \* \*

In the present case, MCL 780.654; MSA 28.1259(4) provides that the search warrant must contain the basis of probable cause within the document or in lieu thereof, a copy of the affidavit may be attached thereto. Defendant does not dispute that at one time, the two documents, the search warrant and the supporting affidavit, were both available. . . . [Rather,] [d]efendant's challenge . . . involves MCL 780.655; MSA 28.1259(5). . . .

\* \* \*

Once it is accepted that *Moten* is not controlling, some perceived conflict with prior decisions of this Court either does not exist or is distinguishable. First, it should be noted that [238 Mich App 495] is without precedential value because a majority of the judges concurred in the result only and did not concur in the rationale underlying the decision. . . . Additionally, the decision of [*Pipok*, *supra*] is not controlling because it involved the statutory interpretation of MCL 780.654; MSA 28.1259(4), not the statute at issue here. Instead, this case is *factually* in accordance with the decision of [*Garvin*, *supra*]. Both cases address the issue of an alleged technical failure to comply with MCL 780.655; [MSA 28.1259(5)], and the *Garvin* Court concluded that that failure did not require suppression of the evidence. The *Garvin* decision was criticized and deemed wrongly decided for its failure to address the *Moten* decision. [238 Mich App] 502-503. However, as indicated, when the actual language of the statute addressed in *Moten* is traced, one concludes that the statute was recodified at MCL 780.654; MSA 28.1259(4). The issue before this panel and the *Garvin* Court [involves] MCL 780.655; MSA 28.1259(5), a statute not addressed by [the] *Moten* Court. Accordingly, the precedent of *Moten* would not be disregarded in reaching this holding.

19

[*Id.* at 206-210.]

#### 4. APPLICATION OF *MOTEN* TO A VIOLATION OF § 5

We agree with much of Judge Hood's dissenting analysis in *Chapin* with respect to the precedential value of *Moten* and its progeny in the context of a violation of MCL 780.655; MSA 28.1259(5). *Moten*, *Bules*, and *Galnt* did not address the statutory violation present in *Chapin* and in this case. Accordingly, these decisions are simply not controlling here.

We first note that defendant in the case at bar makes no claim that § 4 was violated,[15] that the search warrant itself was otherwise invalid, or that her constitutional rights were in any way violated by the issuance or execution of the search warrant. Rather, her claim is that § 5 was violated because the officers failed to provide her with a copy of the affidavit at the time of the execution of the warrant. It is on this basis that defendant contends that the seized firearms must be suppressed.

The statutory violation at issue in *Moten*, *Bules*, and *Galnt* is not comparable to the statutory violation at issue in the case at bar. It is possible to analogize 1922 CL 7079(27)-the liquor law search warrant provision at issue in *Moten*-to § 4 of the current statutory warrant scheme, because

---

[15]Defendant has never claimed that the warrant itself was invalid; nor has she ever claimed that the original search warrant issued by the federal magistrate did not include an affixed copy of the affidavit. Indeed, we note that the face of the search warrant states: "See *attached affidavit*-continued on the attached sheet and made a part hereof." [Emphasis supplied.]

20

both those statutes pertain to the warrant *form*. Where the form of the warrant is deficient, the resulting search may be *constitutionally* defective.[16] In contrast, § 5 of Michigan's present statutory warrant scheme sets forth *procedural* requirements that are to be followed by the police during and after the *execution* of an otherwise facially valid search warrant. A violation of § 5, therefore, does not render the warrant itself invalid, or the search unreasonable.

We leave for another day the question of the proper remedy for a violation of the requirement of § 4 that the warrant either recite the probable cause grounds or, in lieu of such a recitation, incorporate the affidavit by attachment. Because *Moten* did not address a violation of a statutory prescription regarding procedural measures to be taken by the police in their execution of an otherwise valid search warrant, we find it to be inapposite to this case.

### 5. LEGISLATIVE INTENT

Having determined that *Moten* provides no guidance with respect to the issue before us–whether a technical violation of MCL 780.655; MSA 28.1259(5) requires application of the

---

[16]US Const, Am IV ("no Warrants shall issue, but upon probable cause, . . . particularly describing the place to be searched, and the persons or things to be seized"); Const 1963, art 1, § 11 ("[n]o warrant to search any place or to seize any person or things shall issue without describing them"). See, e.g., *Galnt*, *supra* (where search warrant did not recite the material facts alleged in the affidavit as required by § 27 of the liquor law, the warrant was "void" and, therefore, the search violated the defendant's *constitutional* right under Const 1908, art 2, § 10, to be free from unreasonable searches and seizures).

21

exclusionary rule—we turn to the statute itself.

We have recently had occasion to consider whether evidence obtained during the execution of a search warrant must be excluded where the executing officers violated our "knock and announce" statute, MCL 780.656; MSA 28.1259(6).[17] In *Stevens, supra*, we held that the Court of Appeals erred in holding that the exclusionary rule applied to a violation of § 6, where the search was of proper scope under a valid warrant.[18] We first noted that whether suppression is required for a violation of a statute is a question of statutory interpretation, and that our focus must be on legislative intent. *Id.* at 644. Finding that nothing in the language of the "knock and announce" statute indicated that the Legislature intended that the exclusionary rule be applied to a violation of the statute, we "decline[d] to infer such a legislative intent," because "[t]o do otherwise would be an exercise of *will* rather than *judgment*." *Id.* at 645 (emphasis in original).

_____

[17]
> The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant.

[18]We also held in *Stevens* that the Fourth Amendment violation in that case did not require application of the exclusionary rule, primarily because of the lack of any causal connection between the constitutional knock and announce violation and the evidence seized. *Stevens, supra* at 635-643. As stated, defendant in this case makes no claim that her Fourth Amendment rights were violated.

22

In holding that suppression was not an appropriate remedy for the violation of "knock and announce" principles in *Stevens*, we noted that the exclusionary rule "is not meant to put the prosecution in a worse position than if the police officers' improper conduct had not occurred, but, rather, it is to prevent the prosecutor from being in a better position because of that conduct."  *Id.* at 640-641, citing *Nix v Williams*, 467 US 431, 443; 104 S Ct 2501; 81 L Ed 2d 377 (1984).  We additionally found persuasive the fact that the "knock and announce" requirement "does not control the execution of a valid search warrant; rather, it only delays entry." *Stevens*, *supra* at 645.  Where it was the authority of the valid search warrant that led to the discovery of the evidence, not the means of *entry*, there was simply no causal relationship between the violation and the seizing of the evidence.  Because the discovery of the evidence was independent of the officers' failure to comply with the statutory "knock and announce" requirement, we found that suppression of the evidence was not warranted. *Id.* at 646-647.

As in *Stevens*, we now hold that suppression of the evidence seized in this case is not an appropriate remedy for the statutory violation at issue.  Nothing in the language of § 5 provides any basis to infer that it was the legislators' intent that the drastic remedy of exclusion be applied to a violation of the statute.  Furthermore, the exclusionary rule "'forbids the use of direct and indirect evidence *acquired*

23

*from governmental misconduct*, such as evidence from an illegal police search.'" *Stevens*, *supra* at 636, quoting *People v LoCicero (After Remand)*, 453 Mich 496, 508-509; 556 NW2d 498 (1996) (citations omitted; emphasis supplied). The requirements of § 5 are ministerial in nature, and do not in any way lead to the acquisition of evidence; rather, these requirements come into play only *after* evidence has been seized pursuant to a valid search warrant. Because the exclusionary rule pertains to evidence that has been illegally *seized*, it would not be reasonable to conclude that the Legislature intended to apply the rule to a violation of the postseizure, administrative requirements of § 5. Just as there was no causal relationship between the violation of the "knock and announce" statute and the seizing of the evidence at issue in *Stevens*, there is in the instant case no causal relationship between the officers' failure to provide defendant with a copy of the search warrant affidavit and the seizure of the firearms.

We note further that the deterrent purpose[19] of the exclusionary rule would not be served by ordering suppression of the evidence in this case. The officers were executing a valid federal warrant that complied with all federal requirements. The federal magistrate had ordered that the

_____

[19]"'The core rationale consistently advanced . . . for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections.'" *Stevens*, *supra* at 637, quoting *Nix*, *supra* at 442-443.

affidavit be sealed. Defendant does not argue that this procedure violated her constitutional rights or that it ran afoul of any federal requirements concerning the validity of search warrants. Defendant's sole contention is that the failure to leave a copy of the affidavit at her residence or to otherwise "forthwith" provide her with the affidavit violated MCL 780.655; MSA 28.1259(5). The officers cannot be faulted for their inability to provide a copy of the affidavit, since the affidavit was under seal by direction of a federal magistrate. Because there was no police "misconduct" in this case, the deterrent purpose of the exclusionary rule would not be served by applying it under these circumstances. Moreover, because the police would have recovered the weapons irrespective of the alleged statutory violation, suppression of the evidence in this case would "undermine the adversary system by putting the prosecution in a worse position" than if the violation of § 5 had not occurred. *Stevens*, *supra* at 637, citing *Nix*, *supra* at 447.

Application of the exclusionary rule would be particularly inappropriate in the case of a valid federal warrant. Were we to use the exclusionary rule in this case to deter officers from "violating" a state warrant execution provision, we would effectively encourage officers to violate a federal magistrate's order sealing an affidavit. While our statutes do not govern federal warrants, Michigan may, of course, prescribe its own rules for the admission or exclusion of evidence. Our Legislature has not, however,

25

expressed an intent to require suppression even when officers executing a *Michigan* search warrant violate § 5; it certainly has not mandated suppression when evidence was obtained through a valid *federal* warrant.

## V.  CONCLUSION

The police officers in this case were acting under a valid search warrant and within the scope of that warrant. Defendant's constitutional rights were in no way infringed. There is no causal connection between the seizure of the firearms and the officers' failure, *after* the execution of the warrant, to provide defendant with a copy of the search warrant affidavit.

We are unable to discern any legislative intent that a violation of the technical requirements of MCL 780.655; MSA 28.1259(5) result in the suppression of evidence obtained pursuant to a valid search warrant.  Moreover, such a result would be particularly unwarranted in the instant case, where there has been no police misconduct and where, therefore, the deterrent purpose of the exclusionary rule would not be served.  We therefore hold that the trial court and the Court of Appeals erred in applying the exclusionary rule as a remedy for this statutory violation.  The evidence should not have been suppressed, and the case should not have been dismissed, for a violation of the procedural requirements of § 5.  Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with this

26

opinion.[20]

CORRIGAN, C.J., and TAYLOR, and MARKMAN, JJ., concurred with YOUNG, J.

---

[20]We note that, in addition to the statutory violation, defendant raised before the trial court several other grounds in support of her motion to suppress evidence. On remand, the trial court shall address any grounds raised in support of the motion to suppress that were not disposed of in the trial court's oral opinion of September 9, 1998.

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                                   No. 115980

MICHELLE ANN SOBCZAK-OBETTS,

    Defendant-Appellee.

_____

WEAVER, J. (*concurring*).

I concur in the result, but write separately because I believe that the first step in resolving this matter is determining whether the state warrant requirements should be applied to a federal search warrant executed during a search conducted jointly by federal and state authorities. In my opinion, the state warrant requirements should not apply in this situation, and *People v Pipok (After Remand),* 191 Mich App 669, 671; 479 NW2d 359 (1991), was wrongly decided.[1] Because the state warrant requirements should not apply to these facts, the firearms found in defendant's home should not have been suppressed.

Because I would decline to apply the state warrant requirements to these facts, I express no opinion concerning

---

[1] *People v Paladino,* 204 Mich App 505; 516 NW2d 113 (1994), a case in which I participated at the Court of Appeals, cited the *Pipok* holding in its analysis. *Pipok* was binding authority on the Court of Appeals when *Paladino* was decided. Thus, *Paladino* did not address whether *Pipok* was correctly decided.

whether the exclusionary rule would apply to a procedural violation of the state requirements.

STATE OF MICHIGAN

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                   No. 115890

MICHELLE ANN SOBCZAK-OBETTS,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

Because I disagree with the majority's decision to admit the challenged evidence, I respectfully dissent. I would affirm the judgment of the Court of Appeals, and, further, I would not disavow the Court of Appeals decision in *People v Chapin,* 244 Mich App 196; _ NW2d _ (2001).

First, I cannot agree that this Court's decision in *People v Moten,* 233 Mich 169; 206 NW 506 (1925), is not applicable to this case. There, this Court had to decide whether evidence gathered under a warrant that did not recite the basis for its issuance, as required by statute, had to be excluded. *Id.* at 174. Analyzing this question, the Court quoted approvingly from *United States v Kaplan,* 286 F 963, 968 (SD Ga, 1923), which stated that such warrant requirements ensure "that the accused may promptly know what

is the accusation against him, upon what it is based . . . ."
The *Moten* Court concluded that the warrant was not complete and in violation of the statute. Thus, the Court concluded that the accused did not "promptly know" the accusation against him or its basis, and it excluded the evidence gathered under the warrant. See *Moten, supra* at 173-174. The majority distinguishes *Moten,* concluding that *Moten* may require exclusion of evidence gathered under a warrant that does not have the proper statutory form, but does not require exclusion when the asserted statutory shortcoming deals only with the procedure of executing the warrant. It characterizes defendant's complaint as only procedural, and not within *Moten*. See slip op at 26-27.

However, the offered distinction does not account for the *Moten* Court's reasoning. There, the warrant did not recite the basis for its issuance, depriving the defendant of notice of the reasons for the search, and this Court excluded the evidence. In this case, even though the warrant may at some prior time have had an affidavit attached to it, see slip op at 25, n 15, when it was delivered to defendant, it did not. In fact, defendant was not informed of the affidavit's contents until some four months after the search. Thus, defendant did not have notice of the reasons for the search; she could not "'promptly know what [was] the accusation against [her], upon what it [was] based . . . .'" *Moten, supra* at 173, quoting *Kaplan, supra.* Regardless of whether the instant warrant ever had an affidavit reciting its basis, like the warrant that was delivered in *Moten,* the

2

instant warrant did not state its basis when it was delivered to defendant. Like the defendant in *Moten,* then, the instant defendant should not have the evidence gathered under such a warrant admitted against her.

Second, I fear that the majority's search for legislative intent effectively upends the intent that is most clear. Though MCL 780.655; MSA 28.1259(5) does not provide on its face for any remedy, it clearly indicates the Legislature's policy of requiring officers to leave a copy of the warrant, which must recite the basis for its issuance, with the searched party or at the searched premises. Under the decision in this case, however, there is no consequence for a failure to do so.[1] Further, under the majority's reasoning, there would similarly be no consequence for a failure to tabulate the property seized, leave a copy of the tabulation with the searched party or at the searched premises, file that tabulation, or safely keep the property seized.[2] Each of these requirements is ministerial in nature and occurs after the search, but each is required by this statute. Although I would not anticipate police misconduct,[3]

---

[1] Notably, the majority has not relied on the search warrants act's penalty provision, MCL 780.657; 28.1259(7), as it did, erroneously in my view, in *People v Stevens (After Remand),* 460 Mich 626, 641; 597 NW2d 53 (1999), as a reason not to apply the exclusionary rule in this case.

[2] Indeed, this Court has already indicated that police may destroy seized items without actually running afoul of this statute. See *People v Jagotka,* 461 Mich 274, 279-280; 622 NW2d 57 (1999); see also *id.* at 282-283 (CAVANAGH, J., dissenting).

[3] Whatever the role of the federal actors in this case,
(continued...)

3

even if officers did purposefully ignore this statute's requirements, it apparently would make no difference. Rather than leave the Legislature's policy of requiring police to provide a warrant stating its basis so doubtful, I would exclude the challenged evidence to ensure that the policy is observed.

In closing, in *People v Sloan,* 450 Mich 160, 184, n 18; 538 NW2d 380 (1995), this Court stated that excluding evidence as a remedy for a statutory violation was not a "new phenomenon." It apparently has now become the old phenomenon, though, as the Court continues the trend it began in *People v Stephens (After Remand),* 460 Mich 626, 641; 597 NW2d 53 (1999), and continues in this case, toward admitting evidence despite statutory violations. In my view, this is an erroneous course, so I continue to be unable to join this trend. I would exclude the challenged evidence, affirm the Court of Appeals, and would not disapprove of the Court of Appeals decision in *Chapin, supra.* Therefore, I must respectfully dissent.

KELLY, J., concurred with CAVANAGH, J.

---

[3](...continued)
the prosecution has conceded that state law applies.

4