Cavanagh, J.

(dissenting).

Today the majority discounts decades of precedent in order to adopt its preferred policy of limiting application of the exclusionary rale. Because contextual interpretations of the statute and the court rule mandate use of the exclusionary rale, and because the task of altering our state’s policy concerning statutory remedies belongs to the Legislature, I must respectfully dissent.
MCL 780.653
Like the majority, I agree that a contextual analysis of MCL 780.653 will determine the appropriate remedy for its violation. However, I depart from the majority’s analysis insofar as it neglects material rules of statutory interpretation.
Since its enactment in 1966, MCL 780.653 has codified the requirement that search warrants issue only upon a finding of probable cause, giving form to the constitutional protection against unreasonable searches and seizures. The provision clarifies that information in support of a warrant must be supplied by an individual who has personal knowledge of the facts alleged. MCL 780.653, as amended by 1988 PA 80, provides:
The magistrate’s finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon *516 information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
(a) If the person is named, affirmative allegations from which tire magistrate may conclude that the person spoke with personal knowledge of the information.
(b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke ■with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.
Similarly to the federal and state constitutional prohibition against the issuance of a warrant without probable cause, the text of this subsection provides no specific guidance about the requisite judicial response to its violation. Statutory construction is, therefore, required. In re MCI, 460 Mich 396; 596 NW2d 164 (1999). Although the consequence of an infraction is not prescribed, 1966 PA 189 does authorize a penalty for those who intentionally exceed their authority when executing a warrant, who exercise such authority with unnecessary severity, or who maliciously procure a warrant. See MCL 780.657, 780.658.[1] While I agree that these statutory provisions must inform our understanding of MCL 780.653, I am not persuaded that they mandate the result envisioned by the majority.
*517 As an initial matter, the penalty provisions only pertain to a small number of violations. Most violations of 1966 PA 189 are not caused by wilful misconduct. If the criminal provisions are deemed the exclusive remedy for any violation of this act, its directives would have no force. Unlike the majority, I cannot conclude that the presence of criminal penalties for rare incidents of extreme misconduct indicates a legislative intent to displace the exclusionary rule. To so hold would assume the Legislature promulgated an impotent (or ineffectual) statute.[2] For this reason, I find several other well-respected doctrines of interpretation more compelling.
Among them is the strong presumption that a high court’s construction of a statute should be given a heightened stare decisis effect. As noted by the United States Supreme Court,
[the] reluctance to overturn precedents derives in part from institutional concerns about the relationship of the Judiciary to Congress. One reason that we give great weight to stare decisis in the area of statutory construction is that “Congress is free to change this Court’s interpretation of its legislation.” Illinois Brick Co v Illinois, 431 US 720, 736[; 97 S Ct 2061; 52 L Ed 2d 707] (1977). We have overruled our precedents when the intervening development of the law has “removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies.” Patterson v McLean Credit Union, 491 US 164, 173[; 109 S Ct 2363; 105 L Ed 2d 132] (1989) (citations omitted). Absent those changes or compelling evidence bearing on Congress’ original intent, NLRB v Long *518 shoremen, 473 US 61, 84[; 105 S Ct 3045; 87 L Ed 2d 47] (1985), our system demands that we adhere to our prior interpretations of statutes. [Neal v United States, 516 US 284, 295; 116 S Ct 763; 133 L Ed 2d 709 (1996) (emphasis added).]
Because this Court shares a similar relationship with the Michigan Legislature, I find no reason to reject this Court’s precedent in People v Sloan, 450 Mich 160; 538 NW2d 380 (1995), or People v Sherbine, 421 Mich 502; 364 NW2d 658 (1984), which clarify that evidence obtained in violation of MCL 780.653 must be suppressed.
In Sherbine, this Court held that the exclusionary rule is the proper remedy for a violation of MCL 780.653. In support, the Court cited People v Dixon, 392 Mich 691; 222 NW2d 749 (1974), People v Chartrand, 73 Mich App 645; 252 NW2d 569 (1977), and State v Russell, 293 Or 469; 650 P2d 79 (1982). Sherbine, supra at 512 and ns 18-21.
Ten years later, this Court affirmed the application of the exclusionary rule for violations of MCL 780.653 (§ 653) in Sloan, supra. In Sloan, this Court held that a magistrate must base the probable-cause determination on the record (i.e., an affidavit is necessary; sworn testimony is insufficient), and that a violation of this statute requires the exclusion of tainted evidence. The Court’s rationale was based, in part, on the Legislature’s acquiescence to the application of the exclusionary rule as expressed in Sherbine. In 1988, the Legislature revised § 653 in response to Sherbine, overruling by legislative enactment the informant-reliability standard. In doing so, it approved the use of the exclusionary rule to redress violations of § 653.
*519 Though one might be tempted to dismiss the authoritative value of Sloan on the basis of its stated reliance on the now disfavored doctrine of legislative acquiescence, a close examination reveals the Court utilized a related — but quite distinct — rule of interpretation, i.e., the reenactment rule. If a legislature reenacts a statute without modifying a high court’s practical construction of that statute, that construction is implicitly adopted. See Singer, 28 Statutes and Statutory Construction (2000 rev), Contemporaneous Construction, § 49:09, pp 103-112. The reenactment rule differs from the legislative-acquiescence doctrine in that the former canon provides “prima facie evidence of legislative intent” by the adoption, without modification, of a statutory provision that had already received judicial interpretation. Id. at 107. As articulated by the United States Supreme Court, a legislature “is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it [reenacts] a statute without change . . . .” Lorillard, a Div of Loew’s Theatres, Inc v Pons, 434 US 575, 580; 98 S Ct 866; 55 L Ed 2d 40 (1978). As I noted in Sloan, the Legislature could have easily modified the applicability of the exclusionary rule when enacting 1988 PA 80. By altering the text to renounce the informant rule modified in Sherbine, while reenacting the remaining text, the Legislature indicated its detailed knowledge of Sherbine and approved the use of the exclusionary rule for violations of § 653.[3]
*520 Long before the Legislature incorporated the exclusionary rule into MCL 780.653, this Court adopted a presumption in favor of utilizing the exclusionary rule for statutory violations. Over eighty years ago, in People v Knopka, 220 Mich 540, 545; 190 NW 731 (1922), the Court suppressed evidence obtained by warrant issued without probable cause:
It not appearing that the search warrant was issued upon the constitutional and statutory showing of probable cause, it must be held that the evidence procured by it was inadmissible and should have been suppressed and that, with such evidence out, defendant should have been discharged.
In reaching this conclusion, the Court focused exclusively on the statutes establishing search-warrant requirements. Three years later, in People v Moten, 233 Mich 169; 206 NW 506 (1925), the Court again applied the exclusionary rule to remedy a statutory violation, relying, in part, on Knopka. See also People v Bules, 234 Mich 335; 207 NW 818 (1926) (reversing a conviction on the basis of evidence obtained in violation of statutory warrant requirements); People v Galnt, 235 Mich 646; 209 NW 915 (1926) (discharging the defendant where evidence obtained in violation of statute required suppression).
*521 Although this Court has recently attempted to narrow the import of Moten and its progeny, the distinction is particularly inapposite here. In People v Sobczak-Obetts, 463 Mich 687; 625 NW2d 764 (2001), the majority distinguished the Moten-Bules-Galnt trilogy because each analyzed substantive warrant requirements, i.e., the sufficiency of a warrant’s “form,” whereas the statute at issue in Sobczak-Obetts concerned procedures relevant to warrant execution. See also People v Hamilton, 465 Mich 526; 638 NW2d 92 (2002) (holding that an absence of statutory authority did not warrant application of the exclusionary rule where the statute was meant to protect the rights of autonomous local governments); People v Stevens (After Remand), 460 Mich 626; 597 NW2d 53 (1999) (holding that failure to comply with the knock-and-announce rule did not warrant application of the exclusionary rule). However, this distinction between substantive and procedural interests collapses when applied to defendant Hawkins, who challenged the warrant issued for his arrest on substantive grounds, maintaining the affidavit contained neither credible nor reliable allegations. The trial court agreed: “The affidavit clearly does not conform with Michigan statutory authority; namely, MCL 780.653(B).” Regrettably, the majority today conflates substantive and procedural concerns, ignores decades of precedent, and — in spite of evidence to the contrary — disregards the Legislature’s unambiguous approval of the application of the exclusionary rule for violations of MCL 780.653. See 1988 PA 80.
Until the tide began to shift with Stevens (After Remand), the use of the exclusionary rule to remedy statutory violations was well settled. By dismissing *522 the import of this Court’s precedent, including Moten, Bules, Sherbine, Sloan, et al., the majority has imposed a policy-based doctrine that requires express statements to authorize application of the exclusionary rule. Ante at 507. This runs afoul of the Legislature’s approval of the rule’s application to MCL 780.653 as articulated in Sherbine. 1988 PA 80.
While I can appreciate the majority’s need to balance important and competing interests, I take issue with its attempt to ground the analysis in the text of MCL 780.653. Moreover, shifting the focus to a “clear statement” policy works a bait-and-switch on the Legislature. Not only has the majority imposed its own policy on the Legislature, it has displaced the controlling interpretive standard — on which our Legislature has relied — under the guise of strict textualism.
MCR 3.606(A)
The majority concludes that the exclusionary rule is an inappropriate remedy because the text of MCR 3.606(A) does not specifically demand its application. Ante at 512. “When called on to construe a court rule, this Court applies the legal principles that govern the construction and application of statutes. . . . Accordingly, we begin with the plain language of the court rule.” Grievance Administrator v Underwood, 462 Mich 188, 193-194; 612 NW2d 116 (2000). Applied here, the doctrine clarifies our rule’s rigorous demands. MCR 3.606(A) provides:
Initiation of Proceeding. For a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either:
*523 (1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or
(2) issue a bench warrant for the arrest of the person.
As required by this rule, before contempt proceedings may be initiated for any conduct outside of the court’s “immediate view,” a party must provide “a proper showing on ex parte motion supported by affidavits . A motion alone is insufficient. An affidavit, i.e., “a signed statement,” must be provided. Once this requirement is met, the court must either order the accused person to prove why punishment should not be inflicted or issue a bench warrant.
In the light of the potential peril, as well as the substantive safeguards contained in MCR 3.606(A), I find it particularly troublesome that the majority members suggest such rules are mere “technical provisions.” This assertion ignores their function as guarantors of procedural rights. MCR 3.606(A) threatens punishment solely on the basis of exclusive communications between an adversarial party and the court. The procedure authorizes the exercise of police power by judicial officers, which — contrary to the majority’s implication — may not be used to detain an individual without probable cause. As an arm of the state, our actions must respect the polity’s civil rights, and our court rules are drafted to ensure that the exercise of judicial authority is not arbitrary or unlawful. To deem such rules “technical” distorts the substance of the rules and the role of the judiciary.
Although the majority holds otherwise, the exclusionary rule would be particularly appropriate in this instance. As a tool to prevent the abuse of state power, this Court promulgated the court rule to mark *524 the boundaries of acceptable judicial conduct.[4] If the exclusionary rule applied, magistrates and judges would surely take care to confirm that warrants were issued on a proper showing of probable cause. Such proof is all the court rule requires.
THE EXCLUSIONARY RULE’S UTILITY
I agree that the exclusionary rule wields significant power, but only because it is the sole efficacious method by which to protect individuals from state misconduct, as defined by our laws. If any other method of enforcement worked so well, it, too, would be deemed disproportionate and heavy-handed. Thus, our debate is not simply about which remedy is appropriate, but how sacred we deem the right to be free from unlawful state conduct. Whether codified in federal or state constitutions, statutes, or court rules, the judicial branch must enforce the laws that prescribe the scope of state power and protect individuals from the unreasonable exercise of that authority.
*525 In the aftermath of September 11, 2001, as our nation struggles to secure its boundaries while protecting our freedoms, the role of the judiciary— charged with maintaining the delicate balance between state authority and individual liberty— becomes increasingly vital. Our statutes and court rules have been drafted to protect these freedoms. Because both the statute, MCL 780.653, and the court rule, MCE 3.606(A), would be without force but for the exclusionary rule, and because this Court should avoid overruling sound precedent and imposing its policy upon the Legislature, I must reject the majority’s analysis.
CONCLUSION
Though cloaked in a strict Textualism garb, the majority attempts to justify its decision on the basis of its own policy considerations. According to the majority, in the absence of an express legislative statement indicating an intention to invoke the exclusionary rule, the rule will not be applied. However, a more legitimate analysis would require an inference in favor of its application. In so doing, it could be guaranteed that the well-settled and authoritative interpretation of our statutes could be relied upon, and that a statute’s purpose would be effectuated. Moreover, without this tool, aggrieved individuals would have no opportunity for redress. For these reasons, I would affirm the judgment of the Court of Appeals in Hawkins.
With regard to the proper remedy for a violation of MCE 3.606(A), I would also apply the exclusionary rule. The text of the court rule evinces an intention to impose substantive procedural safeguards into the *526 warrant-authorization process. To effectuate this end, the exclusionary rule is required to remedy violations of MCR 3.606(A). Therefore, I would affirm the judgment of the Court of Appeals in Scherf.
Kelly, J., concurred with Cavanagh, J.

 MCL 780.657 provides:
Any person who in executing a search warrant, wilfully exceeds his authority or exercises it with unnecessary severity, shall be fined not more than $1,000.00 or imprisoned not more than 1 year.
MCL 780.658 provides:
Any person who maliciously and without probable cause procures a search warrant to be issued and executed shall be fined not more than $1,000.00 or imprisoned not more than 1 year.

 See People v Sobczak-Obetts, 463 Mich 687, 713-716; 625 NW2d 764 (2001) (Cavanagh, J., dissenting); People v Stevens (After Remand), 460 Mich 626, 648-666; 597 NW2d 53 (1999) (Cavanagh, J., dissenting).

 The majority’s attempt to diminish the value of the reenactment doctrine is misguided. As noted above, the rule merely provides prima facie evidence of legislative intent, and a bill replacing male pronouns with neutral pronouns throughout the code — as suggested in the majority opinion, *520 ante at 508-509 n 19 — would not justify a strong presumption in favor of its application because there would be no indication that the Legislature thoughtfully familiarized itself with the subsections modified. Application of the reenactment rule in this case, by contrast, does shed light on the scope of the Legislature’s familiarity with Sherbine, supra.
Further, unlike the majority, I have more faith in the Legislature’s ability to competently execute its duties. To assume the Legislature would not familiarize itself with the whole of a particular case when revising one subsection of the code in response to that very case does not, as the majority suggests, “violate separation of powers principles.” Ante at 509 n 20. Rather, reference to the reenactment rule under such circumstances simply acknowledges legislative competency.

 The majority claims that application of the exclusionary rule to MCL 780.653 or MCR 3.606(A) would not further the purpose of either because “the aim of the rule is one of police deterrence . . ..” Ante at 499. While I agree that we suppress evidence in an attempt to prevent police misconduct, the exclusionary rule is also utilized to ensure compliance with the law at an institutional level. The ease with which we lose sight of this goal is apparent in People v Cartwright, 454 Mich 550; 563 NW2d 208 (1997), where we equated “good police practice” with violations of the Fourth Amendment:
While conceding that [the officer’s] entry into the mobile home might have been good police practice, the district court held that, nonetheless, it was not a proper search without a warrant. [Id. at 554.]
One wonders how it can be “good police practice” to violate the Fourth Amendment.