Kelly, J.
(dissenting). This case calls on us to determine the meaning of “firearm” as defined in MCL 750.222(d). The majority has given it a meaning not supported by the text of the statute, rendering the statute constitutionally infirm. As the majority now construes it, the statute violates the rule of lenity and the requirements of fair warning. Because of these errors, I must dissent. I would reverse the judgment of the Court of Appeals and remand the case for a new trial.
RELEVANT FACTUAL BACKGROUND
Defendant spotted pieces of metal lying in the grass. On closer inspection, he noted that they were parts of a handgun. He pieced them together but testified that the mechanism could not be made to operate as a firearm. He stated that he decided to keep it in hopes of selling it later as scrap metal, which he collected and sold occasionally for extra money. Defendant testified that he would not have picked up a real gun.
Twenty minutes after defendant picked up the handgun parts, police officers stopped the car in which defendant was a passenger for a traffic violation. When asked, defendant informed an officer that he had the scrap-metal gun in his pocket. He told the officer that it did not work. After arresting him, the officer inspected the gun. She noticed that it had sustained significant damage and had no ammunition clip. She described its slide as “raggedy.” When the officer again examined the gun at the precinct, she removed the safety, and the gun fell apart in her hands. She and her partner laughed at its poor condition.
*659 The officer in charge of the case forwarded the gun to the firearm identification and explosive disposal unit for testing. Tests determined that the gun would not fire in the condition that it was in. The firing-pin assembly was entirely missing. The magazine was missing. And the top portion of the slide was cracked and missing.
Despite these facts, the prosecution charged defendant with being a felon in possession of a firearm (felon in possession)[1] and carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm).[2] At trial, attention focused on the operability of the scrap-metal gun.
A police officer reiterated that many pieces were missing from the gun, including the firing-pin assembly, the magazine, some springs, and part of the slide. He also noted that what remained of the slide was cracked. He concluded that the gun would not function as it was designed to function. When specifically asked whether, if the missing firing-pin assembly and springs were replaced, the gun could be made to fire, the officer equivocated. Because of the broken slide, he stated that he did not know if the gun could ever chamber a round and that the slide likely could never close properly. The officer stated that, if someone could get a round off, the gun certainly could not fire a second shot.
At the close of trial, the judge instructed the jury that a handgun need not be currently operable in order to qualify as a firearm. When asked for clarification on this point, the judge reiterated that a handgun need not be currently operable to be qualified as a firearm for purposes of felon in possession and felony-firearm. The jury returned a guilty verdict on both counts.
*660 Defendant appealed to the Court of Appeals, which decided the case without oral argument. It stated that current inoperability of a firearm is not a defense to felon in possession or felony-firearm. And it concluded that, on the basis of its reading of the facts, the evidence did not show that the gun was unusable as a firearm. The Court of Appeals affirmed both convictions. People v Peals, unpublished memorandum opinion of the Court of Appeals, issued February 15, 2005 (Docket No. 251406). We granted leave to appeal. 474 Mich 886 (2005).
PEOPLE u HILL[3]
Neither the felon-in-possession statute nor the felony-firearm statute defines the term “firearm,” but it is defined elsewhere in the Michigan Penal Code. MCL 750.222(d) provides: “ ‘Firearm’ means a weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air. Firearm does not include a smooth bore rifle or handgun designed and manufactured exclusively for propelling by a spring, or by gas or air, BB’s not exceeding .177 caliber.” Although this Court has not before been asked to determine the meaning of MCL 750.222(d), we did discuss a strikingly similar statute in People v Hill.
The two defendants in Hill faced the charge of possession of a short-barreled shotgun. MCL 750.224b. Each possessed separate parts that together made one shotgun. Hill, 433 Mich 466. To determine the meaning of the term “shotgun,” the Court turned to the definition of “firearm.” MCL 750.222 did not contain a definition of “firearm” at that time. Therefore, the Court referred to MCL 8.3t, which provides:
*661 The word “firearm,” except as otherwise specifically defined in the statutes, shall he construed to include any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion, except any smooth bore rifle or handgun designed and manufactured exclusively for propelling BB’s not exceeding .177 caliber by means of spring, gas or air.
The Court stated that the words of a statute should be read in the way that best harmonizes with the ends the Legislature sought to achieve. Hill, 433 Mich 474 n 8. The following purpose was noted for the firearm laws:
“Statutes making it unlawful to have or carry weapons are designed to suppress the act or practice of going armed and being ready for offense or defense in case of conflict with another, and to outlaw instruments ordinarily used for criminal and improper purposes.... The statutes should receive a reasonable construction in accord with the purpose of the legislature and in the light of the evil to be remedied, and they should be construed with the thought in mind that they are aimed at persons of criminal instincts and for the prevention of crime ....
“A deadly weapon does not cease to be such by becoming temporarily inefficient, nor is its essential character changed by dismemberment if the parts, with reasonable preparation, may be easily assembled so as to be effective.” [Id. at 473, quoting 94 CJS, Weapons, § 2, pp 479-480, and § 6, p 489 (emphasis added).]
Hill reasoned that, to effectuate this intent, the statute should not be limited to the narrowest of circumstances. Therefore, the Court concluded that a temporarily inoperable shotgun remains within the meaning of the term “firearm.” This is because the temporarily inoperable shotgun maintains its “man-killing” status. *662 Id. at 477. The Court concluded: “Thus, temporarily inoperable firearms which can be made operable within a reasonable time fall within the purview of the statutes that govern the use and possession of firearms.” Id.
The majority claims that Hill is “not instructive” because the Hill Court did not purport to interpret the concealed weapons and felony-firearm statutes. Ante at 645. I disagree. Whereas it is true that Hill is not controlling in this case, it is certainly instructive. MCL 8.3t and MCL 750.222(d) are nearly identical. The central components of the definitions, “[a or any] weapon from which a dangerous projectile may be propelled,” are identical. It is the words “may be propelled” that are the central focus of the case before us. At the very least, the interpretation of the identical words in a related statute should provide the Court guidance in reaching a conclusion in this case. The majority’s contentions to the contrary are puzzling.[4]
This Court should grant Hill its appropriate value as strongly influential precedent and reach the same conclusion as Hill did. That is, a weapon qualifies as a firearm only if it can be made operable within a reasonable time. This is true because the general intent behind the felon-in-possession statute and the felony-firearm statute is the same as the intent for the statute concerning possession of a short-barreled shotgun. Hill noted as much. “Statutes making it unlawful to have or carry weapons are designed to suppress the act or practice of going armed and being ready for offense or defense in case of conflict with another . ...” Hill, 433 Mich 473 (emphasis added; citation omitted).
*663 A person carrying a gun that cannot be reasonably and readily repaired is not “ready for offense or defense in case of conflict.” Instead, that person is similarly situated to someone carrying a stick, a club, or a piece of metal. A person carrying a piece of iron rebar could not be convicted of felon in possession or felony-firearm, regardless of his or her intended use for that rebar. There is no reason to treat a person carrying a hunk of scrap metal that formerly functioned as a firearm any differently. Neither can be used to shoot someone, which is the man-killing status intrinsic in a firearm and which is what the Legislature intended to regulate.[5]
The majority claims that, unless it reads a “design” requirement into the statute, a piece of pipe could constitute a firearm. Ante at 643. But, under the majority’s interpretation of MCL 750.222(d), a piece of pipe that had once been part of a gun, for instance the barrel of a shotgun, would also constitute a firearm. This would be true even if there is no significant difference between the two pipes. The majority asserts that it makes little sense to rule that a piece of pipe constitutes a firearm. I question then, what sense would there be in finding that a former gun barrel constitutes a firearm? I submit that there is no sense in the majority’s design requirement and that the Legislature never intended it to exist.
*664 In addition to adding a “design” requirement to the language of MCL 750.222(d), the majority has added a “redesign” defense to the crime. Ante at 652 n 7. It has been obliged to do so to avoid an absurd result. If it did not, certain people would be guilty of felon in possession by sitting near or leaning on a plugged cannon on display in a park.
But in fabricating its “redesign” defense, the majority has reverted to a defense based on operability, albeit one available only in special circumstances. Consider the cannon in the park. The sole “redesign” that has occurred and that is relevant is that which has rendered the cannon incapable of firing a projectile. The majority offers no explanation or support from the text of the statute for reading into the statute this redesign/limited operability defense. By contrast, Hill offers ample support for allowing all defendants to raise an inoperability defense when appropriate.
The majority’s discussion of the cannon in the park implies that a firearm can be “redesigned” to no longer constitute a firearm. But the majority fails to indicate at what point a “redesigning” occurs. And it fails to explain why a “redesigning” did not occur when the gun in this case was extensively damaged. At the very least, under the majority’s ruling, the question of whether the scrap-metal gun was sufficiently “redesigned” should be a question of fact for the jury. The majority should explain what has justified it to take this question from the jury. Why has the case not been remanded for a new trial?
Today’s interpretation of MCL 750.222(d) raises more questions than it answers. Instead of raising unanswered questions by inventing a new redesign/partial operability defense as the majority has done, I would continue to follow the well-reasoned rule of law articulated in Hill.
*665 There is strong evidence that defendant, when arrested, carried no more than pieces of scrap metal that were once parts of a firearm. If this is true, they do not meet the definition of “firearm” in MCL 750.222(d). If the gun could not reasonably and readily be repaired, its essential character had changed. If it could not “ ‘be easily assembled so as to be effective,’ ” it would no longer be a firearm. See Hill, 433 Mich 473 (citation omitted).
Whether a gun is more than temporarily inoperable and therefore not a firearm is a question of fact that should be left to the jury. People v Gardner, 194 Mich App 652, 655; 487 NW2d 515 (1992); see also Hill, 433 Mich 480. In this case, the trial court instructed the jury that a handgun need not be currently operable to qualify as a firearm. This instruction was insufficient to meet the requirements of MCL 750.222(d) and Hill. Anything more than temporary inoperability is a defense to a crime involving a firearm.[6]
Defendant did not object to the trial court’s instruction and did not ask for an instruction on inoperability.[7] *666 However, the jury was improperly instructed, and the error constituted plain error requiring reversal. There are three requirements under the plain error rule: (1) the error must have occurred, (2) it must have been clear or obvious, and (3) it must have adversely affected the defendant’s substantial rights. People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is required if the error resulted in the conviction of an actually innocent defendant or gravely and adversely affected the fairness, integrity, or public reputation of the judicial proceedings. Id., quoting United States v Olano, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).
In this case, it is clear and obvious that the trial court failed to give an instruction on the defense of inoperability of the firearm. This adversely affected defendant’s substantial right to a properly instructed jury and his substantial right to present a defense. Instructions to a jury must include material issues, defenses, or theories as long as there is evidence to support them. People v Reed, 393 Mich 342, 349-350; 224 NW2d 867 (1975). In this case, the operability of the firearm was crucial. Whether defendant possessed an actual firearm or a hunk of scrap metal was the central question. Because an instruction on this important issue was omitted, the jury instructions were inadequate to protect defendant’s substantial right to a properly instructed jury. Id.
It is basic law that a defendant must be allowed to confront the charges against him or her and defend against them. “The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State’s accusations.” Chambers v Mississippi, 410 US 284, 294; 93 S Ct 1038; 35 L Ed 2d 297 (1973). In not instructing the jury on the inoperability of a firearm here, the court robbed defen *667 dant of his ability to fully defend against the state’s accusation that he possessed a firearm. Therefore, he was not allowed to present an appropriate defense. Given that this raises due process questions, the failure adversely affected defendant’s substantial rights.
This plain error requires reversal. It meets both of the possible reasons for reversal articulated in Carines. First, because there was significant evidence that defendant possessed mere scrap metal, there is a legitimate chance that defendant is actually innocent. Second, failure to instruct the jury on the issue that was central to the case robbed defendant of his defense. Because this raises due process concerns, the error affects the fairness and the public reputation of the proceedings. Under such circumstances, defendant is entitled to a remand for a new trial. Carines, 460 Mich 763.
THE MEANING THE MAJORITY READS INTO MCL 750.222(d) IS NOT SUPPORTED BY ITS TEXT
As indicated before, MCL 750.222(d) provides, in part: “ ‘Firearm’ means a weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air.” The majority seizes on the phrase “may be propelled” as distinguishing firearms from other weapons. It concludes that “may be propelled” refers to the design and manner of use of the weapon. To reach the majority’s conclusion requires reading the word “may” to mean “designed to.” The majority reads the statute as if it states: “ ‘Firearm’ means a weapon from which a dangerous projectile is designed to be propelled .. . .”
None of the common definitions of “may” supports such a reading. The Random House Webster’s College Dictionary[8] (2001) defines “may” as an auxiliary verb:
*668 1. (used to express possibility): It may rain. You may have been right. 2. (used to express opportunity or permission): You may enter. 3. (used to express contingency, esp. in clauses indicating condition concession, purpose, results, etc.): strange as it may seem; Let us concur so that we may live in peace. 4. (used to express wish or prayer): Long may you livel 5. Archaic, (used to express ability or power) — Idiom. 6. be that as it may, whether or not that is true. [Emphasis in original.]
The word “design” or “designed” is never used in these definitions. Nor can “designed” be read into them. It is simply not there.
The majority contends that the third and fourth definitions of “may” are consistent with a “design” requirement. Even a casual reading of these definitions will show the reader that this is untrue. Moreover, it should be noted that the majority did not include the sentences offered by the dictionary as typical examples of usage of the word. An attempt to place “designed” into the dictionary’s sentences will show that “design” cannot replace “may.” The examples from the third definition would read: “strange as it [designed] seem; Let us concur so that we [designed] live in peace.” The example from the fourth definition would read: “Long [designed] you livel”
This demonstrates how untenable and extraordinary the majority’s claims regarding the meaning of “may” are. I have not selected sentences that illustrate usages of “may” that are particularly inapplicable. If sentences using all possible dictionary usages were included here, it would become apparent that none fits the majority’s reading of “may.” The sensible conclusion must be that the majority’s reading of “may” to mean “designed” is not plausible.
The majority has frequently claimed that it does no more than read the text of a statute in order to interpret *669 it.[9] But here it appears to abandon that philosophy. It adds meaning to the statute that the Legislature chose not to give and that no dictionary furnishes.
The majority claims that no language in the statute supports an operability requirement. But, in fact, the veiy first definition of “may” supports an inoperability defense. “May” is used to express possibility. Random House Webster’s College Dictionary (2001). Using this definition of “may” in MCL 750.222(d), we find that, to be a firearm, a weapon must possess the possibility of propelling a dangerous projectile. Such a possibility is realized only when the weapon is reasonably and readily made to fire. Therefore, in contrast to the majority’s “design” requirement, the text of MCL 750.222(d) actually supports an operability requirement.
It is only by ignoring the text of the statute and through a tortured definition of the word “may” that the majority reaches its result. In reality, the majority is interpreting the law to read like what it wishes the Legislature had written. Yet it is well settled that, when construing a statute, a reviewing court is supposed to assume that the words chosen by the Legislature are intentional. We should not speculate that the Legislature inadvertently used one word or phrase when it intended another. Detroit v Redford Twp, 253 Mich 453, 456; 235 NW 217 (1931).
The Legislature certainly could have written the language “designed to be propelled” into MCL 750.222(d) had it wished to do so. 18 USC 921(a)(3) provides an example in which Congress did just that:
The term “firearm” means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; *670 (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm. [Emphasis added.]
The majority reads MCL 750.222(d) as having almost the same breadth as 18 USC 921(a)(3). This is inappropriate. 18 USC 921(a)(3) has been in effect since at least 1968. Had the Michigan Legislature intended to enact a statute similar to 18 USC 921(a)(3), it could have copied the language from the federal statute. But it chose not to do so. Its choice should be respected.
Moreover, the Michigan Legislature has fully demonstrated its familiarity with 18 USC 921(a)(3). It wrote MCL 380.1311, which concerns the expulsion and suspension of students. Contained in the statute is a definition of “firearm.” It provides: “ ‘Firearm’ means that term as defined in section 921 of title 18 of the United States Code, 18 USC 921.” MCL 380.1311(ll)(d). The Legislature chose this definition of “firearm” for MCL 380.1311(ll)(d) but not for MCL 750.222(d), a fact that severely undermines the majority’s argument in this case.
We have recognized that “[c]ourts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.” Farrington v Total Petroleum, Inc, 442 Mich 201, 210; 510 NW2d 76 (1993). But the majority does just that, today. In MCL 380.1311(ll)(d), the Legislature used the term “designed” by adopting the definition contained in 18 USC 921(a)(3). In MCL 750.222(d), the Legislature chose not to use that definition or the word “designed.” The majority assumes that this choice was a mistake by the Legislature and reads “designed” into MCL 750.222(d). This is contrary to well- *671 established rules for interpreting a statute and violates the majority’s claimed “plain text philosophy.”
The majority characterizes 18 USC 921(a)(3) as irrelevant. But that it is relevant becomes apparent when we consider that the Michigan Legislature specifically adopted the language of 18 USC 921(a)(3) as its own in MCL 380.1311(ll)(d). The majority has not and cannot explain what renders MCL 380.1311(ll)(d) irrelevant. It has become part of Michigan law. Well-established rules of statutory construction require that we pay respect to legislative enactments. The Michigan Legislature included a “design” requirement in MCL 380.1311(ll)(d). It did not include it in MCL 750.222(d). We cannot assume that the Legislature omitted from one statute through inadvertence the language it placed in another. Farrington, 442 Mich 210.1 respect its choice. The majority does not.
I would respect the difference between MCL 750.222(d) and MCL 380.1311(ll)(d). And I would not read the definitions to be equivalent. Because the Legislature chose to leave “designed” out of MCL 750.222(d), we should do likewise. To fail to do so is to ignore the Legislature’s choice.
Instead of focusing on the Legislature’s choice of words in MCL 380.1311(ll)(d), the majority relies in its analysis on the wording of other statutes that define “dangerous weapon.” For instance, the home invasion statute, MCL 750.110a(l)(b), provides:
“Dangerous weapon” means 1 or more of the following:
(i) A loaded or unloaded firearm, whether operable or inoperable.
Hi) A knife, stabbing instrument, brass knuckles, blackjack, club, or other object specifically designed or customarily carried or possessed for use as a weapon.
*672 (Hi) An object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon.
(:iv) An object or device that is used or fashioned in a manner to lead a person to believe the object or device is an object or device described in subparagraphs (i) to (Hi). [Emphasis added.]
See also MCL 600.606 and MCL 766.14.
In the home invasion statute, the Legislature obviously wished to classify as dangerous more than just firearms. It wanted to prohibit someone from perpetrating a home invasion using any weapon that could threaten harm to the occupants. Hence, it included both operable firearms and inoperable firearms. Although an inoperable firearm cannot fire a shot, it can be used to threaten and intimidate a person during a home invasion. Therefore, the inclusion of inoperable firearms in MCL 750.110a is wholly consistent with Hill’s interpretation of MCL 750.222(d) and with the intent Hill recognized in criminal statutes involving firearms. Hill, 433 Mich 473.
By contrast, the majority’s definition of the word “firearm” is inconsistent with MCL 750.110a(l)(b), MCL 600.606(2)(b), and MCL 766.14(4)(b). The majority reads “firearm” to include inoperable firearms. This definition of “firearm” renders the specific inclusion of inoperable firearms in MCL 750.110a(l)(b), MCL 600.606(2)(b), and MCL 766.14(4)(b) unnecessary, repetitive, and nugatory. If the Legislature intended the word “firearm” to include both operable and inoperable firearms, it would not have added the term “inoperable” to these statutes.
The use of “inoperable” in MCL 750.110a demonstrates that the Legislature knew how to write statutes to include inoperable firearms. But, when it wrote MCL 750.222(d), it decided not to do so. Again, the majority *673 ignores that the Legislature made this choice. Rather, it replaces the words of the statute with its own. In so doing, it creates judicially a legislative policy preference, something the majority has repeatedly claimed to abhor.[10]
The majority all but concedes that its interpretation of “firearm” renders part of MCL 750.110a(l)(b) redundant. But it claims that my interpretation would render the statute more redundant. The claim is misleading. Under Hill, a firearm is only a firearm if it can propel a qualifying projectile. If the Legislature wished to include inoperable firearms in the statute, it should have said so. In MCL 750.110a(l)(b), the Legislature had that intention, and it specifically included inoperable firearms. Far from making this portion of the statute redundant, my interpretation gives it meaning.
The majority also contends that the Hill definition of “firearm” would not include an unloaded gun. This is simply not the case. Hill stated: “[Temporarily inoperable firearms which can be made operable within a reasonable time fall within the purview of the statutes that govern the use and possession of firearms.” Hill, 433 Mich 477. An unloaded firearm can be made operable within a reasonable time simply by loading it with bullets. Accordingly, an unloaded firearm falls under both the definition of “firearm” created by the majority in this case and the definition created by the Legislature and recognized in Hill.
*674 Inexplicably, also, the majority contends that the use of the phrase “designed and manufactured” in the second sentence of MCL 750.222(d)[11] supports its claims that “may” means “designed” in the first sentence. The fact that the Legislature used “designed” in the very next sentence after it decided to use “may” demonstrates that this choice was no accident. It again demonstrates that, when it enacted MCL 750.222(d), the Legislature knew how to create a “design” requirement. It did not do so in the first sentence. The majority asks the reader to ignore the difference in these sentences. To read “designed” into the first sentence defies legal precedent, logic, and common sense.
I agree with the majority that MCL 750.222(d) is intended to describe what weapons constitute firearms. The statute distinguishes firearms from other weapons by focusing on their capacity to propel a dangerous projectile. Therefore, the operability of the firearm is what distinguishes it from other weapons. Hill recognized this distinction. Without the possibility of propelling a projectile, a gun does not significantly differ as a weapon from a club. The majority’s interpretation eliminates the distinction the Legislature sought to create.[12]
*675 The majority attempts to bolster its additions to the language of MCL 750.222(d) by referencing MCL 752.841. MCL 752.841 contains the definition of a “firearm” for the death or injuries from firearms act, MCL 752.841 to MCL 752.845. MCL 752.841 provides: “For the purposes of this act the word ‘firearm’ shall mean any weapon or device from which is propelled any missile, projectile, bullet, shot, pellet or other mass by means of explosives, compressed air or gas or by means of springs, levers or other mechanical device.” (Emphasis added.) The majority contends that the Legislature uses the phrase “is propelled” when it wants to include an operability requirement.
This contention is strained. MCL 752.841 uses the “is propelled” language because a gun must actually be fired to fall within the act’s definition of “firearm.” This is in contrast to the statutes prohibiting felony-firearm, felon in possession, carrying a concealed weapon, and possession of a short-barreled shotgun, which do not require that the weapon actually be operated. Under these crimes, a defendant is equally guilty regardless of whether the firearm is discharged. These are possession crimes. Hence, the Legislature used “may be propelled” in MCL 750.222(d). Had it wanted these crimes to punish the use of a weapon, it would have used the language “is propelled” that it used in MCL 752.841.
Far from supporting the majority’s interpretation, the difference between MCL 752.841 and MCL 750.222(d) demonstrates that Hill came to the correct conclusion regarding the meaning of “may be propelled.” This difference shows how far the majority is reaching to invent the “design” requirement that it *676 relies on. Simply put, the majority has departed from its claimed textualist “philosophy” and added to the language of the statute something that is not there.
THE RULE OF LENITY
The majority claims that its interpretation is the correct reading of MCL 750.222(d). This is despite the fact that Hill reached a different conclusion when confronted with the same “may be propelled” language. And it is despite the fact that the majority recognizes a long split of authority on this subject in the Court of Appeals. The majority admits that several Court of Appeals cases have found an inoperability defense to carrying a concealed weapon. In addition, it concedes that there is more than one plausible meaning to the statute. In ignoring the legal authority to the contrary, the language of the statute, and the other plausible meanings of the language, the majority violates the rule of lenity.
Courts have long held that any ambiguity regarding the scope of criminal statutes must be resolved in favor of lenity. Huddleston v United States, 415 US 814, 830-831; 94 S Ct 1262; 39 L Ed 2d 782 (1974), quoting Rewis v United States, 401 US 808, 812; 91 S Ct 1056; 28 L Ed 2d 493 (1971). That is, if a criminal statute is open to more than one legitimate interpretation, it should be construed strictly. This means that the statute should be construed in favor of the defendant. United States v Wiltberger, 18 US (5 Wheat) 76, 95; 5 L Ed 37 (1820). The rule of lenity is important in criminal cases because it provides constitutional fair warning. It does this by making clear what the law intends to do if someone crosses a certain line and where that line is drawn. United States v Lanier, 520 US 259, 265; 117 S Ct 1219; 137 L Ed 2d 432 (1997).
*677 I do not believe that the majority has put forth a legitimate interpretation of MCL 750.222(d). But even if it had, I would reach the conclusion that inoperability is a defense to felon in possession and felony-firearm.[13] This is because then the rule of lenity would require us to construe MCL 750.222(d) in favor of defendant. The rule favors the result reached in Hill. Therefore, if one could read MCL 750.222(d) to offer an inoperability defense or not to offer it, the constitution requires that the Court chose the former. Wiltberger, 18 US (5 Wheat) 95. The majority ignores the rule of lenity and does not interpret the statute consistently with its actual language. This is constitutionally impermissible.
The majority concedes in its opinion that it finds two possible ways to read the statute.[14] It states: “[B]oth of these meanings are plausible given the use of ‘may’ in the statute....” Ante at 642. Because the majority recognizes that it is choosing between two reasonable interpretations of the statute, it must realize that the constitution requires it to follow the rule of lenity. Wiltberger, 18 US (5 Wheat) 95. But it does not do so. *678 Rather than choose the interpretation that favors defendant, it chose the one that disfavors him. This not only further demonstrates that the majority’s interpretation is legally incorrect, it renders the opinion constitutionally suspect. The majority ignores both the words of the statute and the constitutional requirements placed on it in interpreting those words.
The majority states that it “believe[s] that the words of the statute as a whole indicate an intent to include a broad definition....” Ante at 642 n 2. But this is a policy choice. The statement that a broader rather than a narrower interpretation of the statute was intended violates the rule of lenity, as articulated by the United States Supreme Court.
[W]hen choice has to he made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication. [United States v Universal CIT Credit Corp, 344 US 218, 221-222; 73 S Ct 227; 97 L Ed 260 (1952).]
In this case, there is not even an “ambiguous implication” on which the majority can rest its decision. As such, the choice it makes between the two plausible meanings it recognizes does not survive the constitutional protections afforded by the rule of lenity.
The rules of lenity and fair warning are especially important in this case in light of Hill. Hill offered the only interpretation from this Court of the language “may be propelled.” It should have influenced defendant’s understanding of what constitutes a firearm. Arguably, Hill set the line that divides innocent behavior from criminal behavior. In this case, defendant could not have known that holding a piece of scrap metal *679 would subject him to prosecution for felon in possession and felony-firearm. For that reason, defendant’s constitutional right to fair warning was violated. Lanier, 520 US 265.[15]
Because the rules of lenity and fair warning favor an inoperability defense, such a defense is constitutionally required. Accordingly, this case should be remanded for a new trial. At trial, the court should allow defendant to argue to the jury that the weapon was not operable and could not reasonably and readily be repaired within a reasonable time. Any other outcome raises serious constitutional concerns.
CONCLUSION
Contrary to the majority’s contention, this Court’s decision in Hill provides significant guidance on how to properly interpret MCL 750.222(d). Hill dealt with a nearly identical statute and, in fact, construed the identical phrase “may be propelled” that this case *680 scrutinizes. The majority’s decision to ignore Hill’s guiding precedent is seriously erroneous.
Ignoring Hill, the majority creates a new “design” requirement for MCL 750.222(d). It is unsupported by the text of the statute. And it reads into the statute something that previously was not there and was not intended by the Legislature.[16] The majority’s decision to change the words of the statute violates both the rule of lenity and the constitutional requirement of fair warning.
Defendant was entitled to an inoperability defense. The trial court’s instructions denied him that defense, and they failed to properly inform the jury of the central issue in the case. This amounted to plain error requiring reversal. Therefore, I would remand the case for a new trial.
CAVANAGH, J. I concur only in the result proposed by Justice Kelly.

 MCL 750.224f.

 MCL 750.227b.

 433 Mich 464; 446 NW2d 140 (1989).

 Almost simultaneously with this decision, the majority specifically stated that “absolutely identical phrases in our statutes” should have identical meanings. Paige v Sterling Hts, 476 Mich 495, 520; 720 NW2d 219 (2006).

 The majority claims that the inoperability of a firearm does not alleviate the extreme danger posed by its possession. This statement clearly is not true. Given that such a gun cannot be made to fire within a reasonable time, it does not pose the danger the Legislature sought to regulate. Allowing for an inoperability defense is the only way to effectuate the intent of the Legislature, which was to regulate the killing ability of firearms. An inoperable firearm no longer has that killing ability. The majority provides no basis for its assertion that the Legislature intended the statutes in question to protect people from a gun that could not fire.

 The majority contends that allowing an inoperability defense will encourage suspects to discard or secrete their weapons. A desire to hide a weapon exists in every case. Rare indeed is a felon who would gladly turn his or her weapon over to the police after having used it to commit a crime.
If the majority is implying that a felon is encouraged to disable his or her weapon by my interpretation, I would state that there is no suggestion in the case before us that defendant disabled a firearm. I note that any proof that a defendant disabled a weapon would indicate that it was reasonably and readily repairable at the time of the crime.

 The standard criminal jury instructions provide such an instruction. CJI2d 11.6 states: “It is not against this law to carry a gun that is so [out of repair / taken apart with parts missing / welded together / plugged up] that it is totally unusable as a firearm and cannot be easily made operable.”

 There was no change in the dictionary’s treatment of “may” between the 1997 edition used by the majority and the 2001 edition.

 I encourage readers to compare the majority’s rationale in this case to the rhetoric it used in Paige, 476 Mich 495.

 See Rory v Continental Ins Co, 473 Mich 457, 470-471; 703 NW2d 23 (2005); Devillers v Auto Club Ins Ass’n, 473 Mich 562, 591-592; 702 NW2d 539 (2005); Henry v Dow Chemical Co, 473 Mich 63, 88 n 16; 701 NW2d 684 (2005); Mayor of Lansing v Pub Service Comm, 470 Mich 154, 161, 164; 680 NW2d 840 (2004); People v Hawkins, 468 Mich 488, 500; 668 NW2d 602 (2003); Terrien v Zwit, 467 Mich 56, 66-67; 648 NW2d 602 (2002); People v Sobczak-Obetts, 463 Mich 687, 694-695; 625 NW2d 764 (2001); Herald Co v Bay City, 463 Mich 111, 117; 614 NW2d 873 (2000).

 The second sentence reads: “Firearm does not include a smooth bore rifle or handgun designed and manufactured exclusively for propelling by a spring, or by gas or air, BB’s not exceeding .177 caliber.” MCL 750.222(d) (emphasis added).

 The majority contends that the most reasonable assumption is that the “may” clause is intended to differentiate only between types of weapons. It believes that one should not assume that it is intended to differentiate between types of weapons and also to differentiate between inoperable and operable weapons. It offers no legal support or other explanation for its preference. My conclusion is that the majority’s reading makes little sense given the context of the clause. It is with respect to the operability of a weapon that the Legislature differentiates among weapons. A firearm is a firearm and not a club only when it has *675 the ability to propel a projectile. In reality, the majority is indicating that it is uncomfortable with the means the Legislature chose to distinguish between types of weapons.

 The majority accuses me of resorting to the rule of lenity without finding an ambiguity. It misses my point. My discussion of the rule of lenity is premised on an alternative argument. If the majority had put forth a legitimate interpretation of MCL 750.222(d), the statute would be ambiguous. This is because the language would be susceptible to more than one interpretation and reasonable minds could differ with respect to its meaning. In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW 2d 164 (1999). In such a situation, the rule of lenity would apply. And it would require the statute to be interpreted favoring defendant. Wiltberger, 18 US (5 Wheat) 95. Of the two interpretations presented, the one put forth in Hill favors defendant. Therefore, the rule of lenity requires that we apply the Hill interpretation. Significantly, that interpretation is the one that actually matches the language chosen by the Legislature.

 I reiterate that I do not believe that there are two legitimate interpretations of MCL 750.222(d). This is because the majority’s proposed interpretation creating a “design” requirement is not supported by the language of the statute.

 The majority finds it incredible that I refer to Hill in this section of my argument. It is true that Hill did not purport to interpret the felony-firearm statute. But it is also true that Hill is precedent from this Court interpreting the exact language we discussed in this case. On the same date it issued this opinion, the majority stated that “absolutely identical phrases in our statutes” should have identical meanings. Paige, 476 Mich 520. It made this statement repeatedly and emphatically. For example, it wrote in Paige:
When identical words in the law, lying within a similar statutory context, mean something altogether different, we do believe that there is a “practical workability” problem, not in the sense that a court of law cannot render some decision — no opinion of this Court is “unworkable” in that sense — but in the sense that the law is made a mockery, meaning one thing in one paragraph and something else in the next. [Id., 510-511.]
It is unclear to me why the majority felt so strongly about this point in Paige but not in this case.

 The members of the majority accuse me of falling into the trap of the false choice fallacy by concluding that they are paying mere lip service to their claimed philosophy. “The logical fallacy of false choice is a correlative-based fallacy in which options are presented as being exclusive when they may not be. It is often used to obscure the likelihood of one option or to reframe an argument on the user’s terms.” False Choice, Wikipedia <http://en.wikipedia.org/wiki/False_choice> (accessed July 7, 2006).
It is not I who commits this fallacy here. I do not argue simply that the majority errs because it disagrees with my interpretation. I argue that the majority is not true to its “plain language” philosophy; it ignores the words of the statute and adds a “design” requirement that the Legislature chose not to add. Ironically, it is the majority that commits the fallacy of the false choice. It argues that one must agree with its reading of the statute or commit a logical fallacy Perhaps it does this only “to reframe an argument on the user’s terms.” Id. This seems the true “argumentative sleight of hand....” Ante at 654.