# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES TERRELL ESTES,

Defendant-Appellant.

UNPUBLISHED
December 17, 2015

No. 322749
Wayne Circuit Court
LC No. 14-000403-FH

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of felon in possession of a firearm (felon in possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b[1]. The trial court sentenced defendant to five years' probation for the felon in possession of a firearm conviction, consecutive to two years' imprisonment for the felony-firearm conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 2, 2013, the Narcotics Enforcement Unit of the Detroit Police Department executed a search warrant at 17345 Heyden Street in Detroit. An officer in the unit, Lavar Green, had received a tip from a confidential informant that there were 30 to 40 marijuana plants in the home as part of a marijuana grow operation. Green observed the home on September 29, 2013 and, within a 30 minute period of time, saw two individuals separately enter the home, stay for five minutes, and leave. Green prepared the affidavit that accompanied the request for a search warrant.

Officer Prentis Mercer conducted pre-raid surveillance on the home on October 2, 2013. Mercer observed defendant and two other men approach the front door of the home. Defendant

---

[1] Defendant was also charged with, and acquitted of, delivery and manufacture of 5 to 45 kilograms, or 20 to 200 plants, of marijuana, MCL 333.7401(2)(d)(*ii*), and delivery and manufacture of less than 5 kilograms, or fewer than 20 plants, of marijuana, MCL 333.7401(2)(d)(*iii*).

-1-

removed a key from his pocket and used it to unlock the home's security grate and front door. Approximately 35 minutes later, the narcotics unit raided the home. Inside the home, Officer Shawn Reed observed defendant and two men sitting on a couch in the front living area of the home. Reed observed a large plastic bag of marijuana on a coffee table in front of the couch. Defendant was placed under arrest and was patted down by Officer Alanna Mitchell. Mitchell discovered a key on defendant and was able to lock and unlock the security grate and front door using the key. Reed continued a sweep of the home and discovered 123 marijuana plants and equipment used to grow marijuana in the basement of the home.

Officer Arthur Leavells observed that a rifle was located approximately ten feet from defendant when Leavells entered the home. Leavells testified that the rifle was readily accessible to defendant. However, Dewitt Jackson, one of the men with defendant, testified that the rifle was found by the police in a back bedroom of the home. The other man in the home during the raid, Howard Clark, testified that the gun belonged to him and was defective. Clark testified that he stored the gun in the back bedroom with some of his belongings.

Before trial, defendant moved the trial court to quash the search warrant and suppress the evidence found as a result of the search, on the ground that the issuance of the warrant was not supported by probable cause. The trial court denied the motion.

Defendant was convicted as described above. This appeal followed.

## II. MOTION TO QUASH SEARCH WARRANT AND SUPPRESS EVIDENCE

Defendant argues that the trial court erred when it failed to quash the search warrant and suppress the evidence discovered as a result of the search. We disagree.

"This Court reviews a trial court's ruling regarding a motion to suppress for clear error. However, questions of law relevant to the suppression issue are reviewed de novo." *People v Sobczak-Obetts*, 463 Mich 687, 694; 625 NW2d 764 (2001) (citations omitted).

Both the United States and Michigan Constitutions protect against unreasonable searches and seizures by state actors. US Const, Am IV; Const 1963, art 1, § 11. In cases where the application for a search warrant includes a tip from an anonymous informant, the magistrate issuing the warrant must determine "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." See *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). When reviewing a magistrate's decision to issue a search warrant, this Court must "ensure that the magistrate had a substantial basis for concluding that probable cause existed." See *id*. (citation and quotation marks omitted). Even if probable cause did not exist for the issuance of a search warrant, evidence discovered as a result of the defective warrant need only be suppressed "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v Leon*, 468 US 897, 926; 104 S Ct 3405; 82 L Ed 2d 677 (1984). This "good-faith exception" to the probable cause requirement is meant to curb the effects of the exclusionary rule, because the rule is "designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id*. at 916.

MCL 780.653 codifies the requirements that must be fulfilled before a warrant based on tips from informants will be issued. MCL 780.653(b) states that if the informant is anonymous, the affidavit must contain "affirmative allegations from which the judge . . . may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable."

The information set forth in the affidavit by Green established the requisite probable cause for the search warrant to issue. In the affidavit, Green stated that he was relying on a confidential informant that he had used successfully several times in the past. The information from this particular informant had been accurate in the past and had led to multiple successful searches and convictions. In addition, the informant described the existence of a large number of marijuana plants within the home as well as sales that had occurred in the front and rear of the home.

Apart from the tip, the affidavit contained the statement that Green had observed two individuals separately leave the home within the half-hour period of his surveillance. While this conduct was not in itself illegal, such short-stay traffic also supports the inference that drug sales were being made at the home. See *People v Perry*, 463 Mich 927, 927; 620 NW2d 308 (2000). Viewed in conjunction with the tip from an informant who had been proven reliable in the past, we conclude that the magistrate did not err in determining that there was a "fair probability that contraband or evidence of a crime" would have been found at the home. See *Gates*, 462 US at 238; see also *People v Keller*, 479 Mich 467; 739 NW2d 505 (2007). Additionally, nothing in the record supports the conclusion that Green prepared the affidavit dishonestly or recklessly or could not have harbored an objectively reasonable belief in the existence of probable cause. *Leon*, 468 US at 926. Thus, even if the magistrate had erred in the issuance of the warrant, exclusion of the evidence found in the home would not be the appropriate remedy. See *People v Hawkins*, 468 Mich 488, 502; 668 NW2d 602 (2003).

## III. SUFFICIENCY OF THE EVIDENCE/GREAT WEIGHT OF THE EVIDENCE

Defendant further argues that the prosecution failed to present sufficient evidence to support his convictions or, in the alternative, that the convictions should be reversed and a new trial ordered because the verdict was against the great weight of the evidence. We disagree.

When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). We review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

MCL 750.224f(1) states that a person convicted of a felony "shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state" until 3 years after the person has paid all fines imposed, served all terms of imprisonment, and completed all conditions of probation or parole imposed for the violation. MCL 750.224f(1)(a)-(c). The elements of felon in possession are: (1) that the defendant possessed a firearm, (2) that the defendant was previously convicted of a felony, and (3) that less than five years have elapsed since the defendant completed probation or parole, completed a term of imprisonment, and

satisfied certain other requirements. *People v Perkins*, 262 Mich App 267, 270-271; 686 NW2d 237 (2004). To be convicted under MCL 750.224f, actual possession of a firearm by a felon is not required. Our Supreme Court has held that constructive possession is sufficient for a conviction pursuant to MCL 750.224f. *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012). In determining whether a person is in constructive possession of a firearm, the court must determine whether "the totality of the circumstances indicates a sufficient nexus between defendant and the contraband. . . . [A] person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person." *Id*. Constructive possession of a firearm may exist "if there is proximity to the article together with indicia of control." See *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989).

Here, the parties stipulated that defendant had previously been convicted of a felony and his right to possess a firearm had not been restored as of the time of his arrest. Therefore, defendant's culpability turns on whether he was in possession of the rifle located within 17345 Heyden. The prosecution did not introduce any evidence to suggest that defendant actually possessed the weapon. Leavells testified that the rifle was approximately 10 feet away from defendant when the officers entered the home. Therefore, in order to sustain defendant's conviction under MCL 750.224f, a rational trier of fact must be able to find beyond a reasonable doubt that defendant constructively possessed the rifle found in the home.

Viewed in a light most favorable to the prosecution, there was sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that defendant constructively possessed the rifle. Mercer testified that as defendant and the two other men approached the home, defendant removed a key from his pocket and used it to unlock the security grate and front door of the home. When Leavells and the officers entered the home to execute the search warrant, they observed that the rifle was 10 feet away from defendant. The key to the security grate and front door was found on defendant's person. Given that defendant possessed the means to access the home and to allow others access, and testimony that the rifle was located in close proximity to him, a rational jury could find beyond a reasonable doubt that defendant had the power to exercise control over the weapon.

With regard to defendant's felony-firearm conviction, the same rationale applies. MCL 750.227b states that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony and shall be punished by imprisonment for 2 years." "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. Physical possession is not necessary as long as the defendant has constructive possession." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000). Because defendant had a previous felony conviction, his constructive possession of the rifle (in violation of MCL 750.224f(1), as a felon in possession) served to establish the requisite felony for a felony-firearm conviction. Given that defendant had already been convicted of a previous felony, he possessed and used a key to enter the home, and the testimony that the rifle was readily accessible to him, there was sufficient evidence to support his convictions of violations of MCL 750.224f and MCL 750.227b.

Although defendant argues that testimony by Clark established that the rifle was inoperable, and that defendant's convictions therefore should be reversed, this Court has already addressed the issue of operability of weapons in the context of MCL 750.224f and MCL 750.227b. In *People v Brown*, 249 Mich App 382, 387; 642 NW2d 382, 385 (2002), this Court found "the operability of a gun to be irrelevant for a conviction." Therefore, the fact that the rifle may have been defective is not grounds for reversal of defendant's convictions.

Defendant's claim that the jury verdict was against the great weight of the evidence also lacks merit. In order to preserve the issue of a verdict being against the great weight of the evidence, the losing party must file a motion for a new trial. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). Defendant did not file such a motion with the trial court. "[W]hen a party fails to preserve a great-weight issue for appeal, an appellate court will look for 'plain error affecting the defendant's substantial rights.' " *Id*. (citation omitted). Therefore, we review defendant's claim that the verdict was against the great weight of the evidence for plain error affecting his substantial rights.

To succeed on a claim under the plain error standard, defendant "bears the burden to show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the lower court proceedings." *Cameron*, 291 Mich App at 618. Defendant has failed to demonstrate the existence of a clear or obvious error that affected the outcome of his trial. The prosecution introduced testimony from Mercer and Mitchell that defendant was in possession of the key to the home in which the rifle was found. Defendant used the key to enter the home and was found approximately 10 feet from the rifle when the police entered the home. While defendant introduced testimony from Jackson that defendant never had a key to the home and that the rifle was found in a back bedroom of the home, it was up to the jury to assess the veracity of each witness's testimony, and the jury found Mercer and Mitchell to be the more credible witnesses. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) ("It is the province of the jury to determine questions of fact and assess the credibility of witnesses.").

In sum, sufficient evidence existed for a rational trier of fact to find beyond a reasonable doubt that defendant was a felon in possession of a firearm and was in possession of a firearm while committing a felony. In addition, defendant has failed to demonstrate that the jury verdict was against the great weight of the evidence.

Affirmed.

/s/ David H. Sawyer
/s/ Jane M. Beckering
/s/ Mark T. Boonstra